```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
```

|  |  |
|---|---|
| RABIA MIR | : |
|  | : |
| v. | : Civil Action No. DKC 21-3159 |
|  | : |
| OPTION ONE MORTGAGE CORPORATION, et al. | : |

**MEMORANDUM OPINION**

Pending and ready for resolution in this mortgage dispute is Defendant PHH's motion to dismiss Plaintiff Rabia Mir's complaint. (ECF No. 12). The issues are fully briefed and the court now rules, no hearing being necessary. Local Rule 105.6. Because Ms. Mir cannot plausibly allege that PHH ever owned her mortgage, and because she otherwise fails to state a claim for tortious interference, the motion to dismiss will be granted.

**I. Background**

In 2006, Plaintiff Rabia Mir executed through Option One Mortgage Company a second mortgage on her home. (ECF No. 12-1). She later filed Chapter 11 bankruptcy. (ECF No. 3, at 4). Through that proceeding, she purportedly obtained a Chapter 11 plan through which she could discharge the second mortgage by paying $11,000 to the creditor that owned the debt. (ECF No. 3, at 4). Ms. Mir also claims she "was offered release" from her first mortgage, conditioned upon her selling her home before September 1, 2020.

(ECF No. 3, at 7). She thus contracted to sell her home to her husband, who had secured a loan conditioned on the home's title being clear. (ECF No. 3, at 7).

Ms. Mir alleges these interlocking plans fell apart because, at the time of her bankruptcy proceeding, she discovered that Option One no longer owned her second mortgage, and she was unable to identify who the current owner was. (ECF No. 3, at 7). She was thus unable to pay the $11,000 needed to clear the title. (ECF No. 3, at 7). With the title remaining unclear, her husband could not secure the loan he needed to buy the home, and, because Ms. Mir failed to sell by September 2020, she was unable to discharge her first mortgage as well. (ECF No. 3, at 7).

Ms. Mir claims that she failed to identify the current owner of her second mortgage because the mortgage had purportedly been transferred several times through a complex web of corporate buyouts and mergers. First, Option One—the mortgage's original owner—"changed its name" to Sand Canyon. (ECF No. 3, at 2). Then, Sand Canyon was sold to American Home Mortgage, which was sold to Homeward Residential, which was sold to Ocwen. (ECF No. 3, at 2). Ocwen then merged with another company and "became" PHH Mortgage Corporation—the Defendant seeking dismissal here. (ECF No. 3, at 2). And finally, she alleges that PHH "filed . . . an assignment of deed of trust" and "transferred" her mortgage to Trinity Financial Services. (ECF No. 3, at 2).

That said, the "assignment of deed of trust" document Ms. Mir references in her complaint—a document filed last year in Montgomery, Maryland—suggests that the chain of ownership for Ms. Mir's second mortgage is less complex than she claims. (ECF No. 12-1). According to that document, on April 19, 2021, "Sand Canyon Corporation"—the original owner of her mortgage, now operating under a new name—assigned the mortgage to "Trinity Financial Services," the purported current owner of the debt. (ECF No. 12-1). The document does not list PHH as the mortgage's assignor or assignee. (ECF No. 12-1). Rather, it lists PHH's Florida office address as the "c/o" address for Sand Canyon. (ECF No. 12-1).

In November 2020, Ms. Mir brought a quiet title action against Option One in Maryland state court. (ECF No. 6). She later amended her complaint twice, adding several new claims and defendants. Altogether, Ms. Mir is now suing Option One, Trinity, and PHH, and raising against each defendant (1) a quiet title action, (2) a claim under the Truth in Lending Act (TILA), *see* 15 U.S.C. § 1641(g), and (3) a tortious interference claim. (ECF No. 3). PHH removed the case to federal court and moved this court to dismiss all claims against it. (ECF No. 12).

II. **Standard of Review**

When deciding a motion to dismiss under Federal Rule 12(b)(6), a court must accept as true a complaint's well-pleaded allegations, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe

3

all factual allegations in the light most favorable to the plaintiff, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).  A court need not, however, accept legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), or conclusory factual allegations devoid of any reference to actual events, *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

A court deciding a 12(b)(6) motion does not usually consider extrinsic evidence because "the inquiry is limited to the complaint and the documents attached thereto or incorporated by reference." *Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F.Supp.2d 903, 920 (D.Md. 2008).  A court may, however, consider extrinsic evidence attached to the motion to dismiss if the evidence "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).  And when that extrinsic evidence conflicts with the complaint's allegations, the extrinsic evidence "prevail[s]." *RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F.Supp.2d 660, 664 (D.Md. 2009).

**III. Analysis**

Ms. Mir has raised three claims against PHH: (1) a quiet title claim under Maryland law, (2) a claim under the Truth in Lending Act(TILA), *see* 15 U.S.C. § 1641(g), and (3) a tortious interference claim.  All three will be dismissed.

### A. The quiet title claim against PHH will be dismissed because PHH does not have an adverse claim to Ms. Mir's mortgage.

Under Maryland law, a plaintiff may bring a quiet title action against any "persons having adverse claims to the title of the plaintiff[.]" Md. Code Ann., Real. Prop. § 14-608. Ms. Mir, however, does not allege that PHH has an adverse claim to her second mortgage. To the contrary: She claims that PHH "transferred" her mortgage to Trinity "many years ago[.]" (ECF No. 3, at 2). What is more, PHH has "disclaimed any interest" in Ms. Mir's mortgage. (ECF No. 12, at 5). Thus, because it does not have an "adverse claim[]" to the mortgage, *see* § 14-608, the quiet title action against PHH will be dismissed.

### B. Ms. Mir's TILA claim against PHH will be dismissed because she cannot plausibly allege that PHH ever owned her mortgage.

The Truth in Lending Act (TILA) is "an instrument of consumer protection" that "mandates a variety of disclosures pertaining to consumer credit and lending." *Barr v. Flagstar Bank, F.S.B.*, No. 13-2654, 2014 WL 4660799, at *2 (D.Md. Sep. 17, 2014). As relevant here, within thirty days after a mortgage is transferred, TILA § 1641(g) requires the mortgage's "new owner or assignee" to "notify the borrower in writing of such transfer[.]"

Ms. Mir seems to allege that, through a complex web of corporate mergers and buyouts, her mortgage has passed through a slew of "new owners." (ECF No. 3, at 2); (ECF No. 16, at 1)

5

(calling PHH and Trinity "subsequent holders" of Ms. Mir's mortgage). She claims that the mortgage was first owned by Sand Canyon, then American Home Mortgage, then Homeward Residential, then Ocwen, then PHH, and then—finally—Trinity. (ECF No. 3, at 2). Thus, Ms. Mir argues, PHH should have notified her of its ownership before it purportedly "transferred" the mortgage to Trinity. (ECF No. 3, at 2).

The problem with that argument is that the trust assignment document that Ms. Mir references in her complaint shows that PHH never owned her mortgage. (ECF No. 12-1).[1] Indeed, that document shows that the mortgage was transferred straight from Sand Canyon (the alleged original owner) to Trinity (the alleged current owner). (ECF No. 12-1). In other words, while Ms. Mir claims that PHH was one of several intermediaries that owned her mortgage

---

[1] PHH attached the trust assignment document to its Motion to Dismiss. While this court does not usually consider extrinsic evidence when deciding a 12(b)(6) motion, such evidence may be considered when it is "integral to and explicitly relied on in the complaint" and the plaintiff "do[es] not challenge its authenticity." *Phillips*, 190 F.3d at 618. The trust assignment document fits that exception perfectly: The document is "integral" to Ms. Mir's claim that PHH once owned her second mortgage, and her complaint "explicitly relied" on the document to assert that PHH violated TILA. *See* (ECF No. 3, at 2, 5) (claiming that PHH "filed an extremely late assignment of deed of trust" "without giving prompt notice . . .to the Plaintiff" and asserting that, through this filing, "PHH [has] finally reveal[ed] that it had sold the promissory note to Trinity"). What is more, Ms. Mir does not dispute the document's authenticity in her response—instead, she asserts that it bolsters her claim that PHH owned her mortgage. (ECF No. 16, at 2). Thus, the court can properly consider the document in resolving PHH's 12(b)(6) motion.

between Sand Canyon and Trinity, the assignment document shows there were no intermediaries at all.  Rather, the mortgage went straight from the original owner to the current owner, without PHH or anyone else in between.

So Ms. Mir's alleged web of corporate buyouts is irrelevant. Whether or not PHH merged with a company that bought another company that that once owned Ms. Mir's mortgage, the mortgage itself never passed through PHH's hands.

At most, the trust assignment document lists PHH as the "c/o" address for Sand Canyon.  (ECF No. 12-1).  But "the phrase c/o"—meaning "care of"—merely "designate[s] mail that should be sent to a person through a third party[.]"  *Maggio v. Wisconsin Ave. Psychiatric Center, Inc.*, 795 F.3d 57, 64 (D.C. Cir. 2015) (Rogers, J., dissenting on other grounds) (citing *Webster's Third New International Dictionary* 338 (1993)).  In other words, PHH's "c/o" designation means only that Sand Canyon's "mail" may be "sent to" PHH. *See In re NETtel Corp., Inc.*, 364 B.R. 433, 461 (Bankr.D.D.C.2006) (citation and internal quotation marks omitted).  It does not mean PHH owned Ms. Mir's mortgage.  *Cf. Alaska Excursion Cruises, Inc. v. United States*, 608 F.Supp. 1084, 1088 (D.D.C. 1985) (noting that a ship's ownership document listing a party as a "c/o" is "clearly insufficient to demonstrate that [the party] is the . . . 'owner' of the [ship]").  Thus, PHH was

7

never a "new owner" of Ms. Mir's debt and it cannot be liable under TILA.

Seeking to evade this conclusion, Ms. Mir argues that PHH merged with a company that owns Sand Canyon, and thus PHH is "in privity with" Sand Canyon. (ECF No. 16, at 2). But any purported "privity" between PHH and Sand Canyon is irrelevant because Ms. Mir does not plausibly allege that Sand Canyon violated TILA either. Indeed, TILA requires only the "new owner or assignee" of a debt to provide notice, not the prior owner. *See* 15 U.S.C. § 1641(g). Ms. Mir claims that Sand Canyon was the *original* owner of her mortgage. *See* (ECF No. 3, at 2) (alleging that Option One originally owned Ms. Mir's mortgage and later "changed its name" to Sand Canyon). To the extent that TILA required anyone to contact Ms. Mir, it would be Trinity—the alleged "new owner or assignee" of her debt—not Sand Canyon and certainly not PHH.

**C.   Ms. Mir fails to state a tortious interference claim because she does not allege that PHH knew about—or intentionally interfered with—her sale contract.**

To survive a motion to dismiss, a plaintiff claiming tortious interference must plausibly allege: (1) that a contract exists between the plaintiff and a third party, (2) that the defendant knew about the contract, (3) that the defendant intentionally interfered with the contract, (4) that the third party breached the contract, and (5) that the breach harmed the plaintiff. *Fraidin v. Weitzman*, 93 Md.App. 168, 189 (1992).

Ms. Mir's complaint falls well short.  To be sure, she alleges that she contracted to sell her home to her husband, that her husband breached that contract, and that the breach harmed her. (ECF No. 3, at 7).  She does not, however, allege that PHH knew anything about the contract—much less that PHH intentionally interfered with it.

Instead, she alleges only that PHH "intentionally . . . denied any knowledge" of Ms. Mir's mortgage, (ECF No. 3, at 6), and that this denial is "tantamount" to tortious interference, (ECF No. 16, at 3).  That is incorrect.  Ms. Mir cannot claim tortious interference simply by alleging that PHH engaged in *some* purportedly wrongful intentional act—rather, she must allege that PHH "intentionally induce[d]" a third party to "terminate a contract[.]"  *Ronald M. Sharrow v. State Farm Mut. Auto Ins. Co.*, 306 Md. 754, 765 (1986).  Because she makes no such allegation, she has failed to state a tortious interference claim against PHH.[2]

---

[2] In her Response to PHH's motion to dismiss, Ms. Mir asserts—for the first time—that she "informed [PHH] of her expiring contract offer."  (ECF No. 16, at 3).  This allegation, however, appears nowhere in Ms. Mir's complaint, and "for the purposes of a motion to dismiss," a plaintiff "is bound by her Complaint and cannot amend it through her briefs."  *Stahlman v. United States*, 995 F.Supp.2d 446, 453 (D.Md. 2014).

**IV. Conclusion**

Because Ms. Mir cannot plausibly allege that PHH ever owned her mortgage, and because she otherwise fails to state a claim for tortious interference, the motion to dismiss will be granted.

                                      /s/
                                 DEBORAH K. CHASANOW
                                 United States District Judge